UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| CYNTHIA JIMENEZ, Individually and on Behalf of I.C., a Minor, )<br>)<br>) | |
| Plaintiffs, )<br>) | Case No. 3:23-cv-03678-SPM |
| v. )<br>) | Hon. Stephen P. McGlynn |
| MICROSOFT CORPORATION; EPIC GAMES, INC; ROBLOX CORPORATION; MOJANG STUDIOS; NINTENDO OF AMERICA, INC.; and GOOGLE LLC, )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. ) | |

RESPONSE IN OPPOSITION TO
<u>DEFENDANT EPIC GAMES, INC.'S MOTION FOR SANCTIONS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

LEGAL STANDARD .......................................................................................................10

    A. Federal Rule of Civil Procedure 11 ........................................................................10

    B. 28 U.S.C. § 1927 ....................................................................................................11

ARGUMENT IN OPPOSITION ......................................................................................12

    A. Rule 11 was not violated. ........................................................................................13

        1. Epic Games changed their argument for sanctions based
           on Plaintiffs' response to the "notice" Rule 11 motion during
           the safe-harbor time period. ..........................................................................13

        2. The allegations in the Complaint have a sufficient evidentiary basis. ..........14

        3. Bullock Ward Mason engaged in reasonable investigations
           prior to filing suit. ..........................................................................................15

    B. Section 1927 was not violated. ................................................................................16

    C. Plaintiffs should be awarded their reasonable expenses,
       including attorneys' fees, incurred in having to respond to
       Epic Games's meritless motion for sanctions. .......................................................17

CONCLUSION ..................................................................................................................17

**TABLE OF AUTHORITIES**

                                                                                                              **Pages(s)**

**Cases**

*BCBSM, Inc. v. Walgreen Co.*
   512 F. Supp. 3d 837 (N.D. Ill. 2021) ................................................................... 11, 17

*Corley v. Rosewood Care Ctr.,*
   388 F.3d 990 (7th Cir. 2004) ........................................................... 6-7, 10, 11, 12, 17

*Dal Pazzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006)
   906 F.2d 272 (7th Cir. 1990) ............................................................................... 12

*Frantz v. U.S. Powerlifting Fed'n,*
   836 F.2d 1063 (7th Cir. 1987) ............................................................................. 15

*Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998))
   146 F.3d 452 (7th Cir. 1998)) ............................................................................. 11

*Hakim v. Safariland, LLC*
   79 F.4th 861 (7th Cir. 2023) .................................................................................. 8

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*
   9 F.3d 1263 (7th Cir. 1993) ................................................................................. 11

*Hernandez v. Joliet Police Department*
   197 F.3d 256 (7th Cir. 1999) ........................................................................... 10,13

*Kurowski v. Kraft*
   Case No. 21 C 4363, 2022 WL 17093388, 2022 U.S. Dist. LEXIS 210431
   (N.D. Ill. Nov. 21, 2022) ................................................................................ 10, 13

*Ortiz v. Sazerac Co.*
   Case No. 23-CV-00097, 2024 WL 1302784, 2024 U.S. Dist. LEXIS 54987
   (N.D. Ill. Mar. 27, 2024) ................................................................................ 11, 16

*Riddle & Assocs., P.C. v. Kelly,*
   414 F.3d 832 (7th Cir. 2005) ............................................................................... 12

*Samuels v. Wilder*
   906 F.2d 272 (7th Cir. 1990) ......................................................... 6, 9, 11, 16, 17

*Szabo Food Serv., Inc. v. Canteen Corp.*
   823 F.2d 1073 (7th Cir. 1987) ............................................................................. 15

*United States ex rel. Morgan v. Champion Fitness, Inc.*
   Case No. 1:13-cv-1593, 2019 U.S. Dist. LEXIS 25813 (C.D. Ill. Feb. 19, 2019)
   (citations omitted) 906 F.2d 272 (7th Cir. 1990) ......................... 10, 11, 14, 15, 16

**Statutes**

28 U.S.C. § 1927 ........................................................................................... passim

**Court Rules**

Fed. R. Civ. P. 11 .......................................................................................... passim

## INTRODUCTION

Plaintiffs Cynthia Jimenez, individually and on behalf of I.C., a minor, and undersigned counsel, Bullock Ward Mason, hereby respond and state their opposition to Defendant Epic Games, Inc.'s Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 (Dkt. 109). Neither Rule 11 nor § 1927 have been violated. Plaintiffs' counsel, prior to filing the Complaint on behalf of Plaintiffs, made reasonable inquiry into the facts alleged and determined they could be supported by discoverable information. This included taking steps to confirm that the information provided by Plaintiff could be substantiated.[1] For instance, before the Complaint was filed, Cynthia Jimenez completed an in-depth video game addiction questionnaire containing over 55 questions pertaining to a person's video game usage and addiction. Counsel subsequently reviewed the questionnaire and had multiple conversations with Plaintiffs to inquire, confirm, and develop the factual information in questionnaire and acquire additional information regarding the video game products I.C. used. During these conversations, Cynthia Jimenez confirmed that she and many relatives could attest to I.C.'s gameplay, product usage, and behavior since I.C. began playing video games in 2016. Counsel also learned that Cynthia Jimenez was I.C.'s guardian, but that I.C. previously had a relationship with their father and mother. Counsel learned that not only did I.C. play at home during that time, but I.C. played games with their father when visiting I.C.'s parents; however, I.C. is currently estranged from their father. Based on this information, and in consideration of Plaintiffs' theory of the case and other information regarding the addictive design of Fortnite and the other video game products used by I.C., and Epic Games's other wrongful conduct (as alleged in the Complaint), Plaintiffs' counsel filed suit against Epic

---

[1] *See* Exhibit 1 – Declaration of Attorney Breean Walas (Walas Decl.); Exhibit 2 – Declaration of Attorney Tina Bullock (Bullock Decl.); Exhibit 3 – Declaration of Attorney Rachel Minder (Minder Decl.); Exhibit 4 – Declaration of Attorney Nicholas Gibson (Gibson Decl.); Exhibit 5 – Affidavit of Cynthia Jimenez (Jimenez Aff.).

Games and the other Defendants on Plaintiffs' behalf. More specifically, based on the information provided, the factual allegations challenged by Epic Games concerning I.C.'s use of Fortnite (specifically Compl. ¶¶ 24, 27-28, 235-238)[2] could be supported by discoverable information, *i.e.,* Cynthia Jimenez's witness testimony[3] and other family members' testimony, along with any records Epic Games may have or that may be discovered. *See Samuels v. Wilder,* 906 F.2d 272, 274 (7th Cir. 1990) ("Counsel must investigate, but need not have in hand before filing enough proof to establish the case").

After filing suit, for preservation purposes and at Epic Games's request, Plaintiff provided known information regarding I.C.'s Fortnite gamertag and email address.[4] Taking this information, Epic Games determined I.C. created that account only days before the lawsuit was filed and decided "Plaintiff intentionally concocted evidence to support what she knew to be frivolous claims."[5] More specifically, Epic Games argues that this means that Plaintiffs fabricated the case against Epic Games. But this is not what occurred. As previously stated, Cynthia Jimenez can testify to personally witnessing I.C.'s compulsive and addictive use of Fortnite. This is sufficient to state a claim – and to survive allegations of sanctionable conduct under Rule 11(b). To be clear, Rule 11 sanctions are not warranted. Nor are Section 1927 sanctions. Plaintiffs' counsel has not engaged in any vexatious or unreasonable litigation conduct by rejecting Epic Games's request to dismiss them from the case because of a disputed fact. Even if Plaintiffs were to lose their claim against Epic Games, the filing and maintenance of the suit is not sanctionable conduct as the facts relied upon can be shown through discovery and the claim is supported by Illinois law. *See Corley*

---

[2] *See* Epic Games, Inc.'s Memorandum of Law in Support of Motion for Sanctions (Dkt. 111) (Epic Brf.) at pp. 3, 7-8; *see also id.* at p. 12 ("Plaintiffs' entire complaint against Epic rests on the fiction that I.C. is addicted to Fortnite") (citing, e.g., Compl. ¶¶ 235, 246-283, 527, 534, 548, 551, 579, 582, 604-604, 626-627, 630, 649, 669, 685, 702, 741).
[3] *See* Exhibit 5 – Jimenez Aff.
[4] *See* Declaration of Moez M. Kaba ("Kaba Decl.") (Dkt. 111-2) at Exhibit 1 – Plaintiffs' January 25, 2024 Preservation Letter (filed under seal).
[5] Epic Brf. at p. 2.

*v. Rosewood Care Ctr.,* 388 F.3d 990, 1014 (7th Cir. 2004) ("The fact that the underlying claim turned out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required).").

As Plaintiffs' counsel explained during the meet and confer following receipt of Epic Games's "notice" Rule 11 motion, Plaintiffs can prove use through witness testimony and other means—they are not limited to what Epic Games shows in their records.[6] This included advising that Cynthia Jimenez could testify to the video games products used by I.C. since 2016 and advising that the early use also involved I.C.'s now-estranged father.[7] In short, Plaintiffs responded to Epic Games's request to demonstrate how Plaintiffs' intend to prove use during the safe-harbor period.

Unsatisfied with Plaintiffs' response, which was summarily memorialized via correspondence,[8] Epic Games sent a letter on April 9, 2024—the day before they filed the Motion for Sanctions—recognizing that Plaintiffs had responded to their request for an explanation as to how else I.C. played Fortnite but advising that Epic Games would be amending its motion for sanctions to reflect the conversation and the information provided and would still be moving forward with seeking sanctions.[9] Epic Games filed this Rule 11 motion the following day, April 10, 2024, which was substantially and substantively different from the "notice" Rule 11 motion.[10]

The basis for Epic's Motion, as filed, is that Plaintiffs' "claims against Epic lack a sufficient factual basis" because "Plaintiff's entire Complaint against Epic is premised on the notion that I.C. is allegedly 'addicted' to Fortnite and 'spends approximately 2-3 hours per weekday playing

---

[6] *See* Exhibit 1 – Walas Decl.; Exhibit 4 – Gibson Decl.; Kaba Decl. ¶¶ 11-12.
[7] *See* Exhibit 1 – Walas Decl.; Exhibit 4 – Gibson Decl.
[8] *See* Kaba Decl. at Exhibit 6 – Plaintiffs' March 27, 2024 Correspondence.
[9] Kaba Decl. Exhibit 7 – Epic Games's April 9, 2024 Correspondence
[10] *Compare* Kaba Decl. Exhibit 5 – Epic Games's March 19, 2024 Safe Harbor Letter and "notice" Rule 11 Motion, memorandum, and declarations of Jia and Mincher *with* Epic Games's filed Motion, Memorandum, and declarations of Jia and Kaba (Dkt. 109, Dkt. 111, Dkt. 111-1, Dkt. 111-2).

7

[Fortnite and other] games, and over 35 hours a week total."'[11] Epic Games argues that "[t]hese allegations are objectively frivolous when it comes to Epic" because: (1) the only account Epic Games has for I.C. in their records was created on November 11, 2023, (2) I.C. only played Fortnite for less than one hour that day, (3) Plaintiffs' counsel confirm I.C. has not played Fortnite since that day, (4) Plaintiffs refuse to share any other account detail on which I.C. played, and (5) Fortnite was not released until 2017 so I.C. could not have begun playing it in 2016.[12] Epic Games's arguments are not only meritless, but they also misrepresent *what* Plaintiffs' counsel advised regarding I.C.'s game usage and ignore that Plaintiffs' can prove use through witness testimony and other means than simply Epic Games's own records.

Epic's motion must be denied on both procedural and substantive grounds. First, in violation of the safe-harbor provision, Epic has moved for sanctions on grounds that were not raised in the "notice" Rule 11 motion, and which are based on the explanation Plaintiffs' counsel provided in response during the meet and confer[13] to the original allegations of wrongdoing. Second, and most importantly, all of Epic Games's arguments are baseless attempts to discredit Plaintiffs and counsel. At the time of filing the Complaint, Plaintiffs' counsel, to the best of their "knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the factual contentions had … or [would] likely have evidentiary support." Fed. R. Civ. P. 11(b). This included information that I.C. played Fortnite and that I.C.'s use of Fortnite was a proximate cause of I.C.'s video game addiction and other injuries related thereto.[14] *See Hakim v. Safariland, LLC,* 79 F.4th 861, 872 (7th Cir. 2023) (explaining proximate causation and confirming an injury may have multiple proximate causes, but that is usually a fact question).

---

[11] Epic Brf. p. 7 (citing Compl. ¶¶ 235-238).
[12] *See id.* pp. 7-8.
[13] *See* Epic Brf. p. 6 n. 2.
[14] *See, e.g.,* Exhibits 1-5 (declarations of counsel and Plaintiff's affidavit).

8

When Epic Games brought the 2023 account creation to Plaintiffs' counsels' attention, it did not cause Plaintiffs to change their position as the same testimony from Plaintiffs relating to I.C.'s Fortnite use that supported the filing of the Complaint could still be used to prove use. Nor did it cause Plaintiffs to change their position about the viability of their claim when Epic Games had relied on I.C.'s creation of that Fortnite account to support its Motion to Compel Arbitration.[15]

While Epic Games may use the information it uncovered in its defense to Plaintiffs' claims, it also can be inferred by the factfinder that I.C.'s previous extensive use of Fortnite is evidence of addiction since it is common knowledge that addicts can be triggered to return to a certain gateway drug. Moreover, seeing as how Plaintiffs again confirmed the information regarding I.C.'s use of Fortnite *after* Epic Games served its original correspondence[16] and after it served its "notice" Rule 11 motion[17]—and Plaintiffs' counsel have explained this to Epic Games's counsel—no amendments to the Complaint or further action was necessary. *See Samuels,* 906 F.2d at 275 ("'Rule 11 does not require revisions to conform with newly discovered information.'") (citation omitted). Epic Games insistence otherwise—and the factual disputes raised in its Motion[18]—must be rejected.

Accordingly, and for the reasons detailed below, Epic Games's Motion for Sanctions should be denied and Plaintiffs should be awarded their reasonable expenses, including attorneys' fees, along with any other relief the Court deems appropriate in light of Epic Games's baseless Motion.

---

[15] *See* Epic Games's Motion to Compel Arbitration (Dkt. 89, 91) and Jia Decl. (Dkt. 91-1) at ¶ 24.
[16] Kaba Decl. Exhibit 2 – Epic Games's February 12, 2024 Correspondence.
[17] Kaba Decl. Exhibit 5 – Epic Games's March 19, 2024 Safe Harbor Correspondence (filed under seal).
[18] *See* Epic Brf. at pp. 7-13.

## LEGAL STANDARD

A.  **Federal Rule of Civil Procedure 11**

Federal Rule of Civil Procedure 11(b) requires attorneys to certify

to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that]:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

FED. R. CIV. P. 11(b)(1)-(3). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley,* 388 F.3d at 1013. Thus, Rule 11 includes a safe-harbor provision that provides a reasonable opportunity for the offending party to correct the specific conduct alleged to be in violation of the rule. *See* FED. R. CIV. P. 11(c); *Corley,* 388 F.3d at 1012-1013; *Hernandez v. Joliet Police Department*, 197 F.3d 256, 265 (7th Cir. 1999). "Consistent with Rule 11(c)(2), the court will not consider grounds for Rule 11 sanctions pressed in a Defendants' brief but not included in the motion they attached to their safe harbor letter." *Kurowski v. Kraft,* Case No. 21 C 4363, 2022 WL 17093388, 2022 U.S. Dist. LEXIS 210431, *8 (N.D. Ill. Nov. 21, 2022).

The burden rests on the party seeking Rule 11 sanctions to "establish a *prima facie* case that sanctionable conduct has occurred by filing a motion 'based upon non-frivolous allegations' at which point 'the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim.'" *United States ex rel. Morgan v. Champion Fitness, Inc.*, Case No. 1:13-cv-1593, 2019 U.S. Dist. LEXIS 25813, *4 (C.D. Ill. Feb. 19, 2019) (citations omitted). The focus of the court's inquiry is "what counsel knew at the time the complaint was filed, not what

subsequently was revealed in discovery." *Corley,* 388 F.3d at 1014. Likewise, "[t]he fact that the underlying claim turned out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required)." *Id.* The decision to impose Rule 11 sanctions is discretionary and should be used sparingly. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 863 (N.D. Ill. 2021); *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.,* 9 F.3d 1263, 1269 (7th Cir. 1993). In short, "Rule 11(c) sanctions may be imposed on a party for 'making arguments or filing claims that are frivolous, legally unreasonable, without foundation, or asserted for an improper purpose.'" *BCBSM,* 512 F. Supp. 3d at 863 (quoting *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998)). Rule 11 sanctions should not be imposed merely because a plaintiff does not have ironclad proof or if an underlying claim turns out to be groundless. *See, e.g., Corley,* 388 F.3d at 1014; *Samuels,* 906 F.2d at 274; *Morgan,* 2019 U.S. Dist. LEXIS 25813, at * 12-13; *see also Harlyn Sales,* 9 F.3d at 1270 (noting that "sanctions do not inevitably flow from being wrong on the law"); *Ortiz v. Sazerac Co.*, Case No. 23-CV-00097, 2024 WL 1302784, 2024 U.S. Dist. LEXIS 54987, * 6-7 (N.D. Ill. Mar. 27, 2024) (Plaintiffs' attorney "went about investigating [Plaintiff's] allegations" and "[h]e may not have ironclad proof of the purchase, but that doesn't subject him to sanctions."). Again, Rule 11 only requires that there is (or likely will be) evidentiary support for the allegation *at the time of filing*, not that the party will prevail with respect to its position. *See id.*

**B.     28 U.S.C. § 1927**

Congress has established 28 U.S.C. § 1927 as another means of sanctioning attorneys for litigation misconduct. Section 1927 provides "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney's conduct is "vexatious" under §1927 if the attorney pursues the claim

11

in either subjective or objective bad faith. *Dal Pazzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Objective bad faith "does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Id.* Thus, if an attorney pursues a claim that a reasonably careful attorney would have known to be unsound, the conduct is objectively unreasonable. *See id.; Riddle & Assocs., P.C. v. Kelly,* 414 F.3d 832, 835 (7th Cir. 2005). "Section 1927 is permissive, not mandatory" such that "[t]he court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct" and "[it] may do so in its discretion." *Corley,* 388 F.3d at 1014.

## ARGUMENT IN OPPOSITION

Plaintiffs and Plaintiffs' counsel have not filed a frivolous lawsuit. Plaintiffs and Plaintiffs' counsel have not engaged in any sanctionable conduct. Rather, the opposite is true. Plaintiffs and Plaintiffs' counsel have complied with Rule 11, and Epic Games has brought a frivolous, baseless motion for Rule 11 sanctions. Likewise, Plaintiffs' counsel has not acted unreasonably or vexatiously in refusing to dismiss Epic Games from this lawsuit based on a disputed fact issue during the pleadings stage. Rather, it is Epic Games who is acting unreasonably in seeking sanctions rather than acknowledging that Plaintiffs intend to prove I.C.'s use of Fortnite with witness testimony and further discovery. For these reasons, Epic Games's Motion for Sanctions must be denied. Plaintiffs further request that in denying the Motion, the Court award Plaintiffs (as the prevailing party) their reasonable expenses, including attorney's fees, incurred for the motion.[19] *See* FED. R. CIV. P. 11(c)(2).

---

[19] Plaintiffs will, upon the Court's determination that reasonable expenses should be awarded on their behalf, will submit the appropriate information to the Court to support those expenses.

A. **Rule 11 was not violated.**

1. **Epic Games changed their argument for sanctions based on Plaintiffs' response to the "notice" Rule 11 motion during the safe-harbor time period.**

Rule 11(c) requires that a motion for sanctions be served on an offending party at least 21 days before it is filed with the court. This "safe-harbor" provision gives a party a chance to correct his errors before sanctions are sought or imposed and, if that is done within the 21-day window, the motion for sanctions may not be filed with the court. *See Hernandez*, 197 F.3d at 265. Likewise, when a party advances different or additional grounds for sanctions beyond those included in the motion attached to the safe harbor letter, those arguments should not be considered. *See Kurowski,* 2022 U.S. Dist. LEXIS 210431, at *8-9. This rule was not followed here.

In moving for sanctions, Epic Games acknowledges that it has changed the grounds of the Rule 11 motion, in part, based on counsels' meet-and-confer.[20] Those changes are Epic Games's argument pertaining to I.C.'s use of Fortnite within the past three years and I.C.'s use of Fortnite with their father; rather, than focusing solely on the date on which I.C. created a Fortnite account in 2023.[21] Not only are these facts *not* grounds for issuing sanctions, but they demonstrate that Plaintiffs satisfied Epic Games's request "to identify any basis for [Plaintiff's] allegations against Epic."[22] For this reason, Rule 11 sanctions cannot be imposed. Nor should Section 1927 sanctions be imposed as the revelation of these facts demonstrates Plaintiffs' counsel acted in good faith and had a reasonable basis for filing the complaint (and not dismissing Epic Games at this time). The Motion for Sanctions should be denied.

---

[20] *See* Epic Brf. p. 6 n. 2.
[21] *See* Epic Brf. at pp. 7-8, 10-11; Kaba Decl.
[22] Kaba Decl. Exhibit 5 – Epic Games's Safe Harbor Letter (filed under seal).

### 2. The allegations in the Complaint have a sufficient evidentiary basis.

"Rule 11 does not require a factual contention to be correct, and [courts do] not reach the question of whether it is." *Morgan,* 2019 U.S. Dist. LEXIS 25813, at *12. Instead, "[f]or a lack of evidentiary support to be sanctionable, the evidentiary support must be beyond 'undoubtedly weak'; the claims must be 'devoid of factual support.'" *Id.* (quoting *Bilharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996). Plaintiffs' factual allegations—and specifically those challenged by Epic Games—have evidentiary support.[23]

Again, Epic Games argues that Plaintiffs' "allegations are objectively frivolous when it comes to Epic" because: (1) the only account Epic Games has for I.C. in their records was created on November 11, 2023, (2) I.C. only played Fortnite for less than one hour that day, (3) Plaintiffs' counsel confirm I.C. has not played Fortnite since that day, (4) Plaintiffs refuse to share any other account detail on which I.C. played, and (5) Fortnite was not released until 2017 so I.C. could not have begun playing it in 2016.[24] Plaintiffs have not disputed that I.C. created an account in November of 2023 or that I.C. could only play the game for a short while that day, but Plaintiffs have advised (and now sworn) that I.C. played Fortnite compulsively and addictively from 2017-2020 and that others could attest to that. Further Plaintiffs have not refused to provide I.C.'s father's account information, they simply do not recall it and they currently have no means of obtaining it from I.C.'s father due to the estrangement. And finally, Plaintiffs clearly alleged that Fortnite was released in 2017.[25]  The allegations Epic Games contends are false (Compl. ¶¶ 27-28) clearly are separate paragraphs supported by the facts contained in Ms. Jimenez's affidavit (and known by Plaintiffs' counsel prior to filing):

---

[23] *See* Exhibit 5 – Jimenz Aff.
[24] *See id.* pp. 7-8.
[25] *See* Compl. (Dkt.1) ¶ 246.

- I.C. began playing video games when they were seven (7) years old—and specifically Defendants' games in 2016—and has continued to play video games at an increasing and uncontrollable pace since that time.

- I.C. played the following of Defendants' games: Fortnite, Roblox, and Minecraft.

These allegations, combined with Plaintiffs' clear allegation as to Fortnite's release date, reveals that this alleged "falsity" is far from it. If anything, it is inartful pleading for which sanctions are not proper. *See, e.g., Morgan,* 2019 U.S. Dist. LEXIS 25813, at *18 ("inelegant drafting ought not to be a basis for sanctions, especially where the attorney anticipated significant time to amend before the other part would need to respond"); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) (Rule 11 does not modify Rule 8's notice pleading requirements, it only requires an outline of a case); *Frantz v. U.S. Powerlifting Fed'n,* 836 F.2d 1063, 1068 (7th Cir. 1987) ("Rule 11 draws a 'fine line" [and] "must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case").

In sum, the allegations in the Complaint are ***not*** baseless, without factual foundation, and are not demonstrably false. Epic Games's argument otherwise must be rejected and the Motion denied.

3. **Bullock Ward Mason engaged in reasonable investigations prior to filing suit.**

Rule 11 employs a "reasonableness" standard to determine whether an attorney has violated that rule. More specifically,

> Rule 11 utilizes "an objective standard of reasonableness" which leaves "no room for an 'empty head, pure heart' defense." In other words, the inquiry is neither whether a party believed the claims to have support nor whether the party acted in good faith; the sole questions are whether the party acted reasonably under the circumstances to ensure the truth of the allegations and whether the allegations were made without reasonable evidentiary support. The Seventh Circuit has cautioned courts should only doubt the Rule 11 representations "'after carefully analyzing the legal and factual sufficiency' of the allegations of malfeasance."

15

*Morgan,* 2019 U.S. Dist. LEXIS 25813, at *4-5 (citations omitted). Thus, Rule 11 requires counsel, prior to filing suit, to "investigate, but need not have in hand before filing enough proof to establish the case." *Ortiz,* 2024 U.S. Dist. LEXIS 54987, at *7; *see also Samuels,* 906 F.2d at 274.

Plaintiffs' counsel, *i.e.,* the Bullock Ward Mason attorneys, did that here.[26] Counsel learned information from Plaintiffs and followed up on that information on *multiple* occasions. It is reasonable for counsel to rely on the representations of their client regarding product usage, particularly when Cynthia Jimenez independently identified Fortnite as a video game used by I.C. and Plaintiffs confirmed that usage on multiple occasions *prior to* and *after* filing the complaint. In short, as detailed in the attorney declarations attached hereto, Plaintiffs' counsel engaged in reasonable investigation prior to filing suit.

**B.     Section 1927 was not violated.**

The attorneys of Bullock Ward Mason have not multiplied the proceedings "unreasonably" or "vexatiously" by refusing Epic Games's request to be dismissed from the lawsuit. As previously explained, the Bullock Ward Mason attorneys took reasonable steps as Plaintiffs' counsel to investigate the factual allegations both prior to filing suit and after Epic Games brought for the alleged falsity of the allegation that I.C. played and is addicted to Fortnite. Nor have the Bullock Ward Mason attorneys unreasonably pursued a claim on Plaintiffs' behalf that a reasonably careful attorney would know to be unsound. Instead, counsel has continued to pursue claims which are grounded in factual allegations that can be supported through discovery and are available under Illinois law – even though Epic Games has moved to dismiss those claims under Rule 12(b)(6) and moved to arbitrate those claims. In short, there is no basis upon which Section 1927 sanctions should be assessed against the Bullock Ward Mason attorneys as Plaintiffs' counsel. *See Samuels,*

---

[26] *See* Exhibit 1 – Walas Decl.; Exhibit 2 – Bullock Decl.; Exhibit 3 – Minder Decl.; Exhibit 4 – Gibson Decl.; Exhibit 5 – Jimenez Aff.

906 F.2d at 275-276 (explaining that Section 1927 is a statute that speaks to vexatiously and unreasonably prolonging litigation, something not present at the time the complaint was filed); *BCBSM,* 512 F. Supp. 3d at 863 (finding Plaintiffs' complaints were not frivolous and were legally sound, and therefore no grounds for Section 1927 sanctions existed); *cf. Corley,* 388 F.3d at 1014 (affirming Section 1927 sanctions based on the district court's observations of counsel's conduct throughout litigation). Accordingly, the Motion should be denied and Section 1927 sanctions should not be imposed against Plaintiffs' counsel.

C. **Plaintiffs should be awarded their reasonable expenses, including attorneys' fees, incurred in having to respond to Epic Games's meritless motion for sanctions.**

Rule 11(c) permits the Court to award reasonable expenses, including attorneys' fees to the prevailing party. Because Plaintiffs have had to respond to Epic Games's frivolous and baseless motion—after providing sufficient information to demonstrate a reasonable basis for the factual allegations against Fortnite, Plaintiffs respectfully request that the Court award them those expenses and any other relief to which the Court feels Plaintiffs are entitled.

## CONCLUSION

Plaintiffs and Plaintiffs' counsel have done nothing wrong. Epic Games has uncovered a factual dispute to be resolved by the factfinder; it has not uncovered malfeasance or nefarious conduct by Plaintiffs or their counsel. Factual disputes, even if known during the pleading stage, do not rise to the level of sanctionable conduct. Nor have Plaintiffs' counsel unreasonably and vexatiously prolonged this litigation. Accordingly, and for the reasons stated above, Epic Games's Motion for Sanctions and dismissal of Plaintiffs' lawsuit should be denied and the Court should award Plaintiffs' their reasonable expenses, including attorneys' fees, and any other relief to which the Court determines Plaintiffs are entitled.

Respectfully submitted,

Plaintiffs Cynthia Jimenez,
individually and on behalf of I.C., a minor

BY:     *Breean Walas*
       **BULLOCK WARD MASON LLC**
       Breean "BW" Walas (IL6287617)
       Tina M. Bullock (admitted *pro hac vice*)
       Danielle Ward Mason (admitted *pro hac vice*)
       3350 Riverwood Parkway, Suite 1900
       Atlanta, Georgia 30339
       Telephone: (833) 296-5291
       bwalas@bwmlaw.com
       tina@bwmlaw.com
       danielle@bwmlaw.com

## CERTIFICATE OF SERVICE

I, Breean Walas, certify that on April 24, 2024, I electronically filed the foregoing: *Response in Opposition to Defendant Epic Games, Inc.'s Motion For Sanctions* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

       /s/ *Breean Walas*
       Breean "BW" Walas