UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| CYNTHIA JIMENEZ, Individually and on Behalf of I.C., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION; EPIC GAMES, INC; ROBLOX CORPORATION; MOJANG STUDIOS; NINTENDO OF AMERICA, INC.; and GOOGLE LLC,<br><br>Defendants. | Case No.: 3:23-cv-03678 |

**EPIC GAMES, INC.'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS**

## PRELIMINARY STATEMENT

The Complaint alleges that "I.C. is a 14-year-old individual addicted to" and "unable to stop" playing Fortnite. (Compl. ¶¶ 235, 763.) According to the Complaint, I.C. spends "2-3 hours per weekday . . . and over 35 hours a week total" playing Fortnite and other video games. (*Id.* ¶¶ 236-237, 406.) The Complaint's theories of liability against Epic Games, Inc. ("Epic") all depend on these allegations of ongoing, active, and persistent playing of Fortnite. Contradicting the Complaint, Plaintiff's sworn declaration now concedes that I.C. played Fortnite about four to seven *years ago* (from 2017 until 2020) and has not played since. (Dkt. 115, Jimenez Decl. ¶ 12; *id.* ¶ 22 (stating I.C. tried to "start playing Fortnite again" in November 2023 but could not).)

The Opposition tries to elide these contradictions by alleging a new, unpleaded "gateway drug" theory: that I.C.'s alleged experience playing Fortnite years ago establishes present addiction today. (Opp'n at 9.) Whatever the merits of this new theory, it appears nowhere in the Complaint. Before filing, Plaintiff's counsel had a duty to ensure that the Complaint against Epic had "evidentiary support." Fed. R. Civ. P. 11(b)(3). They had a further duty to withdraw those allegations upon learning that they did not. *Id.* Plaintiff's counsel did neither.

Epic respects Plaintiff's efforts to raise a child notwithstanding the challenges her declaration describes. But those challenges do not excuse her counsel's submission of a factually inaccurate complaint, doubling down on those inaccuracies in opposition to Epic's motion to dismiss, and refusing to withdraw them. Epic respectfully requests that the Court award sanctions and dismiss the claims against Epic or, at least, require Plaintiff to replead them to reflect the truth.

## ARGUMENT

### I. Filing a Complaint Lacking Factual Support and Refusing to Amend or Withdraw It Violates Rule 11 and Section 1927

The Complaint's allegations against Epic are refuted by Plaintiff's admission that I.C. has not played Fortnite in years. As described by Plaintiff, I.C. allegedly played Fortnite "[f]rom 2017 until 2020." (Dkt. 115, Jimenez Decl. ¶ 12.) Three years later, in November 2023, I.C. "created a Fortnite account . . . to start playing Fortnite again" but was unable to due to technical difficulties.

(*Id.* ¶ 22.) I.C. "has not tried to play Fortnite since." (Dkt. 111, Kaba Decl., Ex. 6 at 2.) According to Plaintiff, then, it has been about four years since I.C. last regularly played Fortnite.

That is not the story told in the Complaint. The Complaint alleges at length that I.C. currently plays Fortnite, "is unable to stop" playing, and "cannot control their gameplay or spending in the game." (Compl. ¶¶ 237, 763, 777.) This is not mere "inelegant drafting." (Opp'n at 15.) The Complaint is replete with allegations that I.C. presently plays Fortnite and cannot stop. (*E.g.*, Compl. ¶¶ 7, 49, 235-236, 366, 406, 423, 444, 463, 511, 538, 609, 631, 661, 679, 693, 703, 729.) After filing the complaint, BWM doubled down on these allegations, "affirmatively stat[ing]" in a letter to Epic that cutting off I.C.'s access to Fortnite "would cause serious harm to I.C.'s physical and mental health." (Dkt. 111, Kaba Decl., Ex. 1 at 3 n.1.)[1] None of this is accurate. Not only *can* I.C. stop playing Fortnite, but they apparently already *did* years ago.

The false premise that I.C. continues to play Fortnite uncontrollably is the basis for all claims against Epic. (*E.g.*, Compl. ¶¶ 423, 444, 661, 679.) So central is the claim that I.C. actively plays Fortnite, Plaintiff's counsel persists in mischaracterizing those facts even ***after*** Plaintiff submitted her declaration. Plaintiff's opposition to Epic's motion to dismiss, filed just days ago, once again inaccurately asserts that "I.C. spends approximately two (2) to three (3) hours per weekday playing" Fortnite and other video games "and over thirty-five (35) hours a week in total." (Dkt. 118 at 2.) The opposition also repeats the false claim that I.C. "is unable to stop or limit use of" Fortnite.[2] (Dkt. 118 at 16; *see also id.* (I.C. "cannot stop" playing Fortnite).) Because Rule 11 prohibits counsel from "later advocating" a complaint they know lacks evidentiary support, reiteration of the Complaint's fictional narrative to try to stave off dismissal is independently sanctionable. *Sansone v. Kormex Metal Craft, Inc.*, 2016 WL 1529900, at *8 (N.D. Ill. Apr. 14, 2016) (imposing sanctions for "'later advocating' a pleading (the complaint) which contained

---

[1] Plaintiff's letter also declared, again, inaccurately, that any restriction on I.C.'s access to Fortnite "would need to be done pursuant to medical supervision." (Dkt. 111, Kaba Decl., Ex. 1 at 3 n.1.)

[2] The opposition goes so far as to claim that these false allegations "must be taken as true" because they are "based on the Complaint." (Dkt. 118 at 2 n.1.)

'factual contentions' [plaintiff and his attorney] knew did not have evidentiary support").

The Opposition does not attempt to reconcile Plaintiff's declaration with these repeated allegations of continued, uncontrollable play, nor could it. It instead proffers a new "gateway drug" theory: that "I.C.'s previous extensive use of Fortnite" establishes addiction "since it is common knowledge that addicts can be triggered to return to a certain gateway drug." (Opp'n at 9.) But the Complaint contains no allegations to support this theory. It says nothing about "gateway drugs," supposed "triggers," or how a supposed "addiction" to a particular game somehow continues years after stopping playing. Most importantly, the Complaint says nothing regarding "I.C.'s **previous** extensive use of Fortnite" (*id.* (emphasis added)), because it alleges the opposite: that I.C. currently plays the game and is "unable to stop." (Compl. ¶¶ 235-237, 763; *see also* Dkt. 118 at 3, 16.)

Plaintiff's counsel had the obligation to reasonably investigate their client's claims and attest that the Complaint's "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The Complaint's unsupported allegations violate this obligation and have already prejudiced Epic. Among other things, they prevented Epic from raising additional (meritorious) arguments in its motion to dismiss. If the Complaint had disclosed that I.C. stopped playing Fortnite in 2020, Epic could have also argued that Plaintiff fails to allege proximate cause as to Fortnite, that Plaintiff's "gateway drug" theory fails as a matter of law, and that Plaintiff's claims are time-barred. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (pleadings must "give defendants fair notice of the . . . grounds supporting the claims" and "frame[] the issue[s] and provide the basis for informed pretrial proceedings" (internal quotation marks and citations omitted)).

The Complaint's unsupported allegations also prevented Epic from raising additional arguments that the COPPA allegations are deficient. Those allegations hinge on the assertion that Epic "[c]ollect[ed] personal data" from I.C. when they were under 13 without parental consent. (Compl. ¶ 514.) Although this presupposes that I.C. had an Epic Games account when they were under 13, Plaintiff's declaration admits that neither Plaintiff nor I.C. can identify any such account. (Dkt. 115, Jimenez Decl. ¶ 16.) Plaintiff's sworn statement that I.C. played Fortnite on others' accounts—notably, I.C.'s father's—contradicts allegations that Epic collected ***I.C.'s*** personal data.

The Opposition claims that, to avoid sanctions, a Complaint need only sketch "an outline of a case." (Opp'n at 15 (quotation omitted).) Yet Rule 11 does not permit that "outline" to be fictional. BWM was obligated to reasonably investigate Plaintiff's claims and attest that the Complaint's "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3); *see also, e.g.*, *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987) ("Rule 11 requires not that counsel *plead* facts but that counsel *know* facts after conducting a reasonable investigation."). As one example, there is no support for the Complaint's theory that I.C. cannot stop playing or spending money on Fortnite. (Compl. ¶ 237.) Unlike a case in which a plaintiff "need[s] discovery to prove their case," *Frantz,* 836 F.2d at 1068, Plaintiff had information that absolutely refuted the Complaint's allegations. This suggests counsel either did not adequately investigate or did investigate—as BWM's declarations claim—and nevertheless filed a Complaint replete with false allegations and a motion to dismiss opposition relying on the same falsehoods.[3]

Moreover, once Epic informed BWM of the evidence contradicting the Complaint, Plaintiff's counsel had a duty either not to "continue[] to advocate" that same flawed theory or "to alter or withdraw it[.]" *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008); *see also, e.g.*, *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (Section 1927 "impose[s] a continuing duty upon attorneys to dismiss claims that are no longer viable"). Counsel ignored this duty. When confronted with data showing that I.C. hardly played Fortnite, if at all, Plaintiff's counsel claimed that they were "confident of the ability to provide proof of playing Fortnite as outlined in the allegations." (Dkt. 111, Kaba Decl., Ex. 3 at 2.) Even while submitting to the Court sworn statements refuting the Complaint's allegations, Plaintiff's counsel refuses to withdraw the Complaint and instead continues to allege falsely that I.C. cannot

---

[3] BWM's intent is not dispositive. *Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003) (a judge can impose sanctions "for filing a frivolous suit or claim regardless of . . . motive[]"). It bears noting, however, BWM continues to refuse to properly investigate Plaintiff's claims. For example, while counsel dismisses as "inartful pleading" the inconsistency between the Complaint's allegation that I.C. began playing "Defendants' games in 2016" and the fact that Epic did not release Fortnite until 2017 (Opp'n at 15), Plaintiff makes that same mistake as to the Nintendo Switch. Although Plaintiff claims to have seen I.C. play on a Nintendo Switch "[s]ince 2016" (Dkt. 115, Jimenez Decl. ¶ 8), the Nintendo Switch was not released until 2017.

stop playing Fortnite. This is inconsistent with counsel's obligations. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) (Section 1927 applies where lawyer "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound"); *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 182-83 (N.D. Ill. 2014) (similar, for Rule 11).

## II. Epic's Motion Was Procedurally Proper

The Opposition claims Epic's motion improperly included "different or additional grounds for sanctions" from the version served on Plaintiff. (Opp'n at 13.) Not so. Epic updated the motion only to reflect communications between the parties during the safe harbor period, as the law allows.

Under the Seventh Circuit's "substantial compliance" standard, which the Opposition fails to address, a Rule 11 motion is proper so long as the moving party "describe[s] the specific conduct that they believe[] [is] frivolous." *In re Meier*, 223 F.R.D. 514, 517 (W.D. Wis. 2004) (letter notice substantially complied with Rule 11). (*See also* Mot. at 6 n.2.) Epic substantially complied with Rule 11. The filed motion did not change the grounds for sanctions. Both the served and filed versions assert violations of Rule 11(b)(1) and (b)(3) and Section 1927 based on evidence, known to Plaintiff and discoverable by a reasonable investigation, that I.C. does not presently play Fortnite. (*Compare* Dkt. 111, *with* Dkt. 111, Kaba Decl., Ex. 5 (under seal).) BWM thus had a "full and fair opportunity to respond and show cause" that Rule 11(c)'s safe harbor provision is designed to provide. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999); *see also Thompson v. United Transp. Union*, 167 F. Supp. 2d 1254, 1258 (D. Kan. 2001) ("substantial compliance" where Rule 11 motion was updated to address court's intervening rulings).[4]

## CONCLUSION

Epic respectfully requests that the Court (1) dismiss the claims against Epic or, in the alternative, require amendment to state the true facts; and (2) impose monetary sanctions to compensate Epic for the attorneys' fees and costs incurred since Epic informed BWM of the Complaint's deficiencies.

---

[4] The Opposition's lone case is inapposite because, unlike here, the movant raised a new argument in its reply brief. *See Kurowski v. Kraft*, 2022 WL 17093388, at *4 (N.D. Ill. Nov. 21, 2022).

| | |
|---|---|
| DATED: May 8, 2024 | Respectfully submitted:<br><br>_____ |
| **SWANSON MARTIN & BELL LLP** | **HUESTON HENNIGAN LLP** |
| Michael A. McCaskey<br>330 N. Wabash, Suite 3300<br>Chicago, IL 60611<br>(312) 321-8464<br>Email: mmccaskey@smbtrials.com<br><br>*Attorney for Defendant Epic Games, Inc.* | Moez M. Kaba*<br>Allison L. Libeu*<br>Padraic Foran*<br>523 West 6th St., Suite 400<br>Los Angeles, California 90014<br>(213) 788-4340<br>Email: mkaba@hueston.com<br>          alibeu@hueston.com<br>          pforan@hueston.com<br><br>Adam Minchew*<br>1 Little West 12th St.<br>New York, New York 10014<br>(646) 930-4046<br>Email: aminchew@hueston.com<br><br>* Admitted pro hac vice<br><br>*Attorneys for Defendant Epic Games, Inc.* |

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that an exact copy of the foregoing was filed electronically with the Clerk of the United States District Court, Southern District of Illinois, through CM/ECF system, which will send electronic notification to each of the counsel of record herein on this 8th day of May 2024.

                      */s/ Michael A. McCaskey*